Kelly Patrick MILLS *v.* STATE of Arkansas

CR 98-894                                         999 S.W.2d 674

Supreme Court of Arkansas
Opinion delivered September 23, 1999

*Appellant*, pro se.

No response.

P ER CURIAM. In 1985, Kelley Patrick Mills was charged with capital felony murder for the beating death of Nancy Sangalli, his girlfriend's great-aunt. The State sought the death penalty against him. Shortly before trial, Mills agreed to testify against his girlfriend and co-defendant, Lisa Berry, in exchange for the prosecutor's acceptance of his guilty plea. Mills fulfilled his obligation to testify against Ms. Berry and his plea was accepted.

Mills subsequently filed in the trial court a timely petition and amended petition for postconviction relief pursuant to Criminal Procedure Rule 37. In the petition, Mills alleged that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment, and that his custodial confession was coerced. The trial court held a hearing on the petition in 1990 but did not enter an order denying relief until 1998. Mills now appeals that order. We affirm.

In this appeal, Mills repeats his argument concerning the voluntariness of his confession. He also argues that he is entitled to postconviction relief because of prosecutorial misconduct that occurred during plea negotiations. Specifically, he alleges that the prosecutor misadvised him concerning his eligibility for parole. According to Mills, the prosecutor told him that with a sentence of life without parole, he "would be out in ten years." We find no merit to either of these arguments.

With regard to Mills's claim that the prosecutor's alleged statement about parole eligibility warrants postconviction relief, we conclude that Mills has failed to sustain his burden of proving that he was prejudiced by the prosecutor's statements. Mills never alleged, during the hearing or otherwise, that he relied on any kind of parole eligibility when he decided to plead guilty. The abstract of the plea hearing, moreover, clearly indicates that Mills not only understood the meaning of "life without parole,"

but also that his decision to plead guilty was motivated solely by his desire avoid the death penalty. The following is an excerpt of Mills's statements during the plea hearing:

> I want to change my plea which I have entered in this cause. . . . I understand that I am presently charged with the offense of capital murder and the offense of capital murder carries with it as the two alternatives for punishment life without parole and the death penalty. You have also explained to me what life without parole means and obviously the meaning of the death penalty. It is anticipated that if I chose to proceed to trial that the court would also instruct the jury as far as a possible charge of a lesser included offense of first-degree murder. I understand that the jury not only would consider the charge of capital murder but also the charge of first-degree murder. *The penalty for first-degree murder is ten to forty years in the penitentiary or life with parole.* (Emphasis added.) You also explained to me that there was a possibility that the jury could find me guilty of first-degree murder and the possibility that the jury could find me guilty of capital murder.
>
> . . . .
>
> Part of that decision (to plead guilty) was the possibility of the death penalty. Another thing that influenced me to plead guilty to capital murder was the way the jurors talked in the jury room. It was the way they were asked questions about the death-qualified jury.

As can be seen, Mills understood that there was a possibility that a trial could end in a conviction for first-degree murder, and that in that circumstance, it was possible that he could receive a sentence for a term of years. His desire to waive the possibility of a conviction for first-degree murder and the corresponding possibility of a lighter sentence indicates his understanding of the contrast between "life without parole" and a sentence that carries the possibility of parole. Furthermore, Mills unequivocally states that it was the prospect of the death penalty, and his perception of the potential jurors' inclination to sentence him to death, that motivated his decision to plead guilty. We therefore conclude that Mills understood that he would not be eligible for parole if he pleaded guilty to capital murder, and that it was his desire to avoid the death penalty, and not the alleged misstatements by the prose-

cutor, that was the basis of his decision to enter a plea. *See Propst v. State,* 335 Ark. 448, 983 S.W.2d 405 (1998).

■ ■ Mills next argues that he is entitled to postconviction relief because the custodial statement that he gave soon after his arrest was coerced. This allegation cannot be raised in a Rule 37 petition that challenges a guilty plea. When a guilty plea is challenged, the sole issue is whether the plea was intelligently and voluntarily entered with the advice of competent counsel. *Branham v. State,* 292 Ark. 355, 730 S.W.2d 226 (1987). When Mills pleaded guilty, he waived the right to challenge the voluntariness of his statement. Accordingly, postconviction relief on this issue is not warranted.

Affirmed.